ACCEPTED
04-14-00906-cv
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
3/27/2015 3:16:36 PM
KEITH HOTTLE
CLERK

No. 04-14-00906-CV

IN THE FOURTH COURT OF APPEALS
at SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
3/27/2015 3:16:36 PM
KEITH E. HOTTLE
Clerk

**DAVID MAUK**

Appellant

v.

Appellees

**PIPE CREEK WATER WELL, LLC and ROBERT RAE POWELL**

Cause No. 2013-CI-00386; Appeal from the 408th Judicial District Court,
Bexar County, Texas

**APPELLEES' AMENDED REPLY BRIEF**

LAW OFFICES OF KEITH P. MILLER, PC
14350 Northbrook, Suite 150
San Antonio, Texas 78232
Telephone: (210) 524-9040
Telecopier: (210) 267-2982
KEITH P. MILLER
State Bar No. 14093725
kmiller@kpmlawpc.com
MEGAN H. KUCERA
State Bar No. 24076449
megan@kpmlawpc.com

**ATTORNEYS FOR APPELLEES,
PIPE CREEK WATER WELL, LLC
AND ROBERT RAE POWELL**

## IDENTITY OF PARTIES & COUNSEL

In order that the members of this Court may determine disqualification and recusal under the Texas Rules of Civil Appellate Procedure, Appellant certifies that the following is a complete list of the parties, attorneys, and other persons with a financial interest in the outcome of this lawsuit:

**Appellees:**

Pipe Creek Water Well, LLC d/b/a Pipe Creek Water Well
Robert Rae Powell

**Attorneys for Appellees:**
LAW OFFICES OF KEITH P. MILLER, P.C.
14350 Northbrook, Suite 150
San Antonio, Texas 78232
Telephone: (210) 524-9040
Telecopier: (210) 267-2982
Keith P. Miller
State Bar No. 14093725
kmiller@kpmlawpc.com
Megan H. Kucera
State Bar No. 24076449
megan@kpmlawpc.com

**Appellant:**

David Mauk

**Attorneys for Appellant:**
MCKAMIE KRUEGER, LLP
941 Proton
San Antonio, Texas 78258
Telephone: (210) 546-2122
Telecopier: (210) 546-2130
Adolfo Ruiz
State Bar No. 17385600
adolfo@mckamiekrueger.com
Barbara L. Quirk
State Bar No. 16436750
barbara@mckamiekrueger.com

# TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL ........................................................................... ii

INDEX OF AUTHORITIES ....................................................................................... iv

STATEMENT OF FACTS ............................................................................................ 1

SUMMARY OF THE ARGUMENT ............................................................................ 4

ARGUMENT AND AUTHORITIES ........................................................................... 5

CONCLUSION ........................................................................................................... 15

PRAYER ..................................................................................................................... 16

CERTIFICATE OF COMPLIANCE ........................................................................... 16

CERTIFICATE OF SERVICE .................................................................................... 16

APPENDIX .................................................................................................................. 17

# INDEX OF AUTHORITIES

## RULES

TEX. R. EVID. 802 .................................................................................................14

Tex. R. Evid. 901 ...............................................................................................14

## STATUTES

Tex. Civ. Prac. & Rem. Code § 51.014(8) (Vernon 2014).................................5, 6

Tex. Civ. Prac. & Rem. Code § 101.001(3) (Vernon 2014).................................5

Tex. Civ. Prac. & Rem. Code § 101.106(f) (Vernon 2014)...........................6, 7, 11

## CASES

*Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 374
(Tex. 2006)..................................................................................................6

*Mission Consol. Independent School Dist. v. Garcia,* 253 S.W.3d 653, 656
(Tex. 2008)..............................................................................................6, 7

*Huntsville Independent School Dist. v. Briggs,* 262 S.W.3d 390
(Tex. App. – Waco 2008, pet. denied).......................................................7

*Kelly v. Galveston County,* 520 S.W.2d 507, 513
(Tex. Civ. App. – Galveston1975, no writ) ...............................................8

*Kassen v. Hatley,* 887 S.W.2d 4, 8
(Tex. 1994)..................................................................................................8

*Villasenor v. Villasenor,* 911 S.W.2d 411, 418
(Tex. App. – San Antonio 1995, no writ) ...............................................11

*In re Jennings,* 203 S.W.3d 32, 36
(Tex. App. – San Antonio 2006, no pet.).................................................11

*Baker v. Story,* 621 S.W.2d 639, 643
(Tex. Civ. App. – San Antonio 1981, writ ref'd n.r.e.) ...........................12

*Kelly v. Galveston County,* 520 S.W.2d 507, 513
(Tex. Civ. App. – Galveston1975, no writ) .............................................12

*Borger Indepen. School Dist. v. Dickson,* 52 S.W.2d 505
(Tex. Civ. App. – Amarillo 1932, writ ref'd n.r.e.)..............................................................12

*City of Lancaster v. Chambers,* 883 S.W.2d 650, 653
(Tex. 1994)...................................................................................................................12

*Boozier v. Hambrick,* 846 S.W.2d 593, 597
(Tex. App. – Houston [1st Dist] 1993, no writ)..................................................................13

*Campbell v. Jones,* 264 S.W.2d 425, 427
(Tex. 1954)...............................................................................................................12, 13

*Russell v. Edgewood Independent School Dist.,* 406 S.W.2d 249, 252
(Tex. Civ. App. – San Antonio 1966, writ ref'd n.r.e.) ......................................................13

*Franka v. Velasquez,* 332 S.W.3d 367, 382-383
(Tex. 2011)...................................................................................................................15

No. 04-14-00906-CV

IN THE FOURTH COURT OF APPEALS
at SAN ANTONIO, TEXAS

---

**DAVID MAUK**

Appellant

v.

Appellees

**PIPE CREEK WATER WELL, LLC and ROBERT RAE POWELL**

---

Cause No. 2013-CI-00386; Appeal from the 408th Judicial District Court,
Bexar County, Texas

---

**APPELLEES' AMENDED REPLY BRIEF**

---

TO THE HONORABLE FOURTH COURT OF APPEALS

NOW COME Appellees, PIPE CREEK WATER WELL, LLC and ROBERT RAE POWELL, and submit this Appellees' Reply Brief in accordance with the Texas Rules of Appellate Procedure.

## REFERENCES

Appellees adopt Appellant's nomenclature for references to the parties.

## STATEMENT OF FACTS

Appellee, PC Drilling and Service, LLC d/b/a Pipe Creek Water Well, LLC is a water well drilling company which, in the ordinary course of business, drills commercial and domestic water wells throughout West and South Texas. Appellee, Robert Rae Powell is a partial owner and manager of Pipe Creek Water Well, LLC.

1

In November, 2011, Pipe Creek Water Well, LLC was engaged by a particular landowner to drill a livestock well in Bandera County, Texas. Appellee, Robert Rae Powell, acting as agent for the landowner, obtained the water well permit. However, the actual drilling of the water well was conducted by another state licensed water well driller, Bryce Wallace. Sometime thereafter, it was discovered that the water well drilled by Mr. Wallace had collapsed or was not functioning as intended. In accordance with state and local regulations, Robert Rae Powell and Pipe Creek Water Well, LLC, acting by and through a third licensed driller, Rodger North, agreed to and ultimately drilled a new water well for the landowner. Despite this effort, however, during the summer of 2012, the Bandera County River Authority and Groundwater District (hereinafter "the District") began an investigation of the initial well drilled by Mr. Wallace and subsequently issued Notices of Violation of District rules.

Sometime thereafter, Appellant, David Mauk, acting as an individual and outside the course and scope of his duties as General Manager for the Bandera County River Authority and Groundwater District, with knowledge and intent that the statements be republished, began making defamatory and disparaging statements to reporters for the *Bandera County Courier* and *Bandera Bulletin* regarding Robert Rae Powell as an individual and about Pipe Creek Water Well, LLC. Those statements were published by the newspapers and widely circulated. The statements were malicious in nature and contained egregious distortions of the facts including the following statements:

- "The actions of [Appellees] seem to rise above simple incompetence and likely border on criminal violations."
- Pipe Creek Water Well displayed "complete contempt and total disregard for district and state rules."

2

- The drill site "looked like the [Appellees] had walked away and abandoned the well."

Further, Appellant specifically represented that Appellees were barred from drilling water wells in Bandera County, despite the fact that the Bandera County Groundwater District and River Authority has no authority to take such an action. Finally, in a statement that was clearly meant to imply that Appellees had knowingly or intentionally taken advantage of or victimized an individual who was elderly and disabled, Appellant also made the following statement to the *Bandera County Courier*:

> "It is very troubling that the victim of [Appellees] actions, Mr. Hayes, of [sic] both elderly and disabled... We want to protect people of the district from being taken advantage of."

On January 9, 2013, Plaintiffs filed their Original Petition against Appellant, David Mauk in his individual capacity for certain defamatory statements made by him outside the course and scope of his employment as General Manager for the Bandera County River Authority and Groundwater District. (C.R. vol. 1, 1-6). Shortly thereafter, Appellant filed his first Motion to Dismiss, alleging the trial Court did not have jurisdiction pursuant to Texas Civil Practice and Remedies Code §101.106(f). (C.R. vol. 1, 23-25, 92-97). On or about April 22, 2013, after examining the pleadings and hearing the arguments of counsel, the Honorable Judge Cathleen Stryker denied Defendant's Motion without prejudice. (C.R. vol. 1, 106-107). More than a year later, on October 8, 2014, Defendant filed a second Amended Motion to Dismiss for Lack of Jurisdiction, again alleging the trial Court did not have jurisdiction pursuant to Texas Civil Practice and Remedies Code §101.106(f). (C.R. vol. 2, 1-230). On or about December 8, 2014, after examining the pleadings and hearing the arguments of counsel, Defendant's second Motion to Dismiss was denied by the Honorable Richard Price. (C.R. vol. 2, 231-240, 254).

On December 22, 2014, Defendant filed its Notice of Interlocutory Appeal. (C.R. vol. 2, 258-260). Appellants filed their brief on January 30, 2014.

3

## SUMMARY OF THE ARGUMENT

Over the course of this litigation, Defendant and Appellant, David Mauk, has filed two Motions to Dismiss this cause pursuant to Section 101.106(f) of the Texas Civil Practice and Remedies Code alleging that Appellant acted within the course and scope of his duties and that this suit could have been brought against the Bandera County Groundwater District and River Authority. (C.R. vol. 1, 23-25; C.R. vol. 2, 1-230). Both Motions were unequivocally denied. (C.R. vol. 1, 106-107; C.R. vol. 2, 254).

David Mauk acted willfully, maliciously, and in bad faith, far exceeding the scope of his discretionary duties and authority when he made numerous defamatory statements to local Bandera newspapers concerning Pipe Creek Water Well, LLC and Robert Rae Powell. (C.R. vol. 2, 136-147). The statements were gross distortions of fact and reflected nothing more than David Mauk's personal disdain for Robert Rae Powell. Appellant has attempted to gain immunity for his tortious conduct by claiming that his duties include communication with media. However, the statements show Appellant acted willfully and maliciously, in bad faith, and outside the scope of his employment. Furthermore, the statements made by Appellant do not comport with the findings and resolution of Appellant's government employer, rendering it impossible to bring this suit against the Bandera County Groundwater District and River Authority, and wholly defeating Appellant's claim that he is entitled to have this case dismissed under Section 101.106(f) of the Texas Civil Practice and Remedies Code. (C.R. vol. 2,

Appellant, David Mauk, is an erring official who was purposely sued in his individual capacity for his own intentional torts. Appellant is not entitled to a dismissal of this action and both trial courts properly denied Appellant's Motions to Dismiss.

4

# ARGUMENT AND AUTHORITIES

## I. Texas Civil Practice & Remedies Code § 51.014(8) does not provide a basis for interlocutory appeal by David Mauk.

Texas Civil Practice & Remedies Code § 51.014(8) provides that a person may appeal from an interlocutory order of a district that "grants or denies a plea to the jurisdiction *by a governmental unit* as that term is defined in Section 101.001." Tex. Civ. Prac. & Rem. Code § 51.014(8) (Vernon 2014). Section 101.001(3) defines "governmental unit" as follows:

> (A) this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;
> (B) a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority;
> (C) an emergency service organization; and
> (D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution. Tex. Civ. Prac. & Rem. Code § 101.001(3) (Vernon 2014).

In the instant appeal, the plea to the jurisdiction was not brought by a governmental unit as defined by the aforementioned statute and was not brought by a government official sued in his official capacity. To the contrary, Appellant, David Mauk has been sued in his *individual capacity* for actions outside the scope of his employment for a governmental unit. (C.R. vol. 1, 1-6, 13-18, 77-82, 109-114). This suit does not seek to impose any sort of liability on the governmental unit which employs Appellant. *Id.* Accordingly, the Order denying Appellant's Amended Motion to Dismiss is not an interlocutory order and this matter is not ripe for appeal at this time.

## II. Texas Civil Practice & Remedies Code § 101.106(f) does not require a dismissal of this action.

Without waiving the foregoing argument that Appellant has no statutory basis to perfect this interlocutory appeal pursuant to Texas Civil Practice & Remedies Code § 51.014(8), Appellees assert, in the alternative, that Appellant is not entitled to a dismissal of this action under Texas Civil Practice & Remedies Code § 101.106(f) for the reasons to follow *infra*.

### *Texas Civil Practice and Remedies Code Section 101.106(f).*

In this interlocutory appeal, Appellant makes the assertion that Section 101.106(f) of the Texas Civil Practice and Remedies Code requires the court to dismiss this suit as a matter of law. However, a cursory review of this statute and its legislative history illuminates Appellant's apparent misapprehension of the nature of Section 101.106 and the policy behind it.

Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages. *Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 374 (Tex. 2006). In 2003, the legislature amended the Texas Tort Claims Act to include Section 101.106. *Mission Consol. Independent School Dist. v. Garcia,* 253 S.W.3d 653, 656 (Tex. 2008). The apparent intent was to force claimants to "decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable, thereby reducing the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery." *Id.* at 657. In other words, the statute forecloses the possibility of suing the government employee **and** the governmental unit[1]. Thus, Section 101.106(f) requires, on a governmental employee's motion, dismissal of a suit when (1) the basis of the suit against a government employee is within the general scope of that

---

[1] Plaintiff elected to sue the individual, David Mauk, and did not sue the governmental unit he is employed by.

6

employee's employment and (2) the suit could have been brought against the governmental unit. Tex. Civ. Prac. & Rem. Code § 101.106(f) (Vernon 2014).

The practical effect of this statute is that a plaintiff is no longer able to include every tortfeasor with liability or vicarious liability. *Huntsville Independent School Dist. v. Briggs*, 262 S.W.3d 390 (Tex. App. – Waco 2008, pet. denied). Section 101.106 effectively narrows the issues for trial and reduces delay and duplicative litigation costs. *Garcia*, 253 S.W.3d at 657. However, the statute in no way forecloses a suit against a government employee or requires that a suit against a government employee be automatically dismissed on the mere assertion a defendant is acting within the scope of his employment, as Appellant would have this Court believe. Whether or not Mr. Mauk acted within the scope of his employment is a fact issue in this case.

### *Plaintiffs sued Defendant, David Mauk in his individual capacity.*

At the outset, it is also important to note that Appellees, explicitly and unmistakably, sued Appellant, David Mauk, in his individual capacity. (C.R. vol. 1, 1-6, 13-18, 77-82, 109-114). This was clearly evidenced by Appellees' naming of David Mauk as an individual in the suit and without reference to his employment. Appellees specifically named Appellant in their Original Petition as follows:

"Defendant, David Mauk, an *individual* residing in Kerr County, Texas..."

Appellant's contention that Appellees did not plead or indicate that David Mauk was being sued in his individual capacity in their Original, First, and Second Amended Petitions is completely and demonstrably false. Moreover, any reference made to David Mauk as General Manager for the Bandera County Groundwater District and River Authority was solely for the purpose of providing a factual context for the Court and pleading sufficient facts to give fair notice to

7

Defendant/Appellant as to the subject matter of this lawsuit. Appellant's argument that Appellees judicially admitted this was a suit against David Mauk in his official capacity is a tortured and incorrect manipulation of Appellees' pleadings. Furthermore, as Appellant indicates in his Brief, any question Appellant may have had in regard to the capacity he had been sued was eliminated by the subsequent amending of Appellees' pleadings. (C.R. vol. 1, 101-103, 109-114).

### *It is Appellant's burden to show he was acting in his official capacity.*

Additionally, it is important to note that Appellant misstates the burden in a case such as this. The law requires Appellant to do more than merely assert that he was acting properly in the conduct of his office and that the suit could have been brought against the governmental unit. *Kelly v. Galveston County,* 520 S.W.2d 507, 513 (Tex. Civ. App. – Galveston1975, no writ). It is actually *Appellant's burden* to conclusively show that he was acting within the scope of his discretionary authority and in good faith. *See id; see Kassen v. Hatley,* 887 S.W.2d 4, 8 (Tex. 1994).

In the instant case, Appellant has provided no evidence, let alone conclusive evidence, that he was properly acting within the scope of his authority and has provided no proof that he was acting in good faith. For the third time, Appellant wishes to simply make the assertion he was acting within the scope of his employment and have this cause summarily dismissed or gain immunity. However, such conclusory assertions by Mr. Mauk are not enough to strip the trial court of jurisdiction over this matter. Accordingly, the Honorable Catherine Stryker and the Honorable Richard Price found that Appellant had not met his burden and was not entitled to a dismissal under Section 101.106(f) of the Texas Civil Practice and Remedies Code. (C.R. vol. 1, 106-107; C.R. vol. 2, 254).

8

_**Appellant was not acting in his official capacity as required by Section 101.106(f).**_

It is has been Appellees' unwavering position throughout this suit that Appellant, David Mauk, acted in his individual capacity and outside the course and scope of his duties as General Manager for the Bandera County River Authority and Groundwater District when he willfully and maliciously made defamatory and disparaging statements, based solely on a personal vendetta against Appellee, Robert Rae Powell, gross distortions of fact, and an incompetent and incomplete investigation. To allege that these actions are within the province of his duties as General Manager is frankly, preposterous. In fact, Appellant himself reluctantly admitted in his deposition, "I don't believe the Board would condone slanderous statements."[2] (Mauk Deposition pg. 145, ln. 18-19).

In his second Amended Motion to Dismiss, Appellant relied heavily on a purported job description for the General Manager which states the General Manager's job duties include, "Maintain[ing] professional contacts with State, National, and local groundwater agencies, attorneys, consultants, legislators and the media." Mr. Mauk was unable or unwilling to clearly define the term "professional contacts" at his deposition. (Mauk Deposition pg. 33-37). However, he ultimately stated that whether something fell under "professional contacts" "would have to be answered on a case-by-case basis" and agreed that there is a limit to the scope of the term "professional contacts". (Mauk Deposition pg. 37, ln. 11-20, pg. 39, ln. 13). Indeed, whether the statements at issue fall within the scope of "professional contacts" is a fact issue for a jury to decide.

---

[2] It is intriguing that the affirmative defense of truth was not asserted amongst the plethora of defenses pled by Appellant in Defendant's Original Answer. (C.R. vol. 1, 7-9). Also noteworthy is the fact that in the last 25 months of litigation, Appellant has not designated a supervisor or member of the Board to provide testimony that Mr. Mauk was acting within the course and scope of his duties as General Manager.

9

Greater evidence yet that Mr. Mauk's actions fell outside the scope of "professional contacts" with the media and outside the course and scope of his duties is the fact that several of Mr. Mauk's defamatory statements were not reflective of the findings of his government unit employer. (C.R. vol. 1, 154-195; C.R. vol. 2, 96-100). For example, Appellant stated the Appellees' alleged actions "likely boarded on criminal violations". (C.R. vol. 2, 140-141). This statement is slander *per se* and is not in accordance with the Board's findings in this matter. (C.R. vol. 2, 96-100). In his deposition, Appellant admitted this fact:

Q: Was that within the Board's findings?

A: It was in a draft report, so it would not have been in their findings, because it was not in the draft – it was not in the final.

Q: So it was not within their findings, correct?

A: It was not in the report that was put up in front of them.

....

Q: My question is, where in those documents does it say my client's actions bordered on criminal violations?

A: It does not say that, ma'am.

(Mauk Deposition pg. 117, ln. 19-24, pg. 119, ln. 14-17).

While it may be argued by Appellant that his duties include communication with media, slander *per se* and other similar tortious conduct by definition can never be in good faith and removes Appellant from the "general scope of [his] employment." Further, it can hardly stand to reason that sharing demonstrably false information with the media or misstating the official position of the governmental unit is within the course and scope of Appellant's official duties or is maintaining "professional contacts".

10

## *This case could not have been brought against the governmental unit.*

As noted above, Appellant was not sued for communicating to the media regarding the actions being taken by his governmental employer or the fact that his employer had issued a preliminary finding of violations of its rules. Appellant is being sued for the malicious and demonstrably untrue remarks he made thereafter, some which constitute slander *per se*[3]. Looking again at the previously noted example, Appellant has failed to produce evidence which in any way indicates that it was the Bandera County Groundwater District and River Authority's position or finding that Appellees' actions in this matter rose to the level of being criminal in nature. To the contrary, the Board did not make such a finding and such a finding was not contained in any official report or resolution of the Board, a fact readily admitted by the Appellant. (C.R. vol. 1, 154-159; Mauk Deposition at 117 - 118). Likewise, Appellant has failed to produce any evidence showing that his employer pursued any sort of criminal investigation or criminal complaint in this matter. When asked about any sort of criminal investigation at his deposition, Appellant affirmed there was none. (Mauk Deposition 111-112).

Because these slanderous comments in no way reflect the actual findings or resolution of the Bandera County Groundwater District and River Authority and its Board, this suit could not have been brought against the governmental unit. Accordingly, Appellant has not met the second prong of Section 101.106(f) and is not entitled to a dismissal of this action. Tex. Civ. Prac. & Rem. Code § 101.106(f).

---

[3] To be considered slander *per se*, the statement must impute the commission of a crime, impute the contraction of a loathsome disease, cause injury to a person's office, business or profession, or impute sexual misconduct. *Villasenor v. Villasenor*, 911 S.W.2d 411, 418 (Tex. App. – San Antonio 1995, no writ); *In re Jennings*, 203 S.W.3d 32, 36 (Tex. App. – San Antonio 2006, no pet.).

11

## III. Appellant, David Mauk is not immune from suit.

Texas courts have long declined to grant immunity to governmental employees. *Baker v. Story*, 621 S.W.2d 639, 643 (Tex. Civ. App. – San Antonio 1981, writ ref'd n.r.e.). Unlike the sovereign, governmental employees can be held individually liable for their tortious actions. *Kelly v. Galveston County*, 520 S.W.2d 507, 513 (Tex. Civ. App. – Galveston 1975, no writ); *Borger Indepen. School Dist. v. Dickson*, 52 S.W.2d 505 (Tex. Civ. App. – Amarillo 1932, writ ref'd n.r.e.); *Baker v. Story*, 621 S.W.2d 639, 643 (Tex. Civ. App. – San Antonio 1981, writ ref'd n.r.e.). Governmental employees are liable for all departures from the standard of conduct applicable to ordinary persons and governmental employees are always liable for malicious conduct. *See id.*

Appellees have continually and repeatedly asserted that Appellant's conduct was willful and malicious and fell outside the scope of his official duties as General Manager of the Bandera County Groundwater District and River Authority. (C.R. vol. 1, 1-6, 13-18, 77-82, 92-97, 109-114; C.R. vol. 2, 231-240). Whether or not this conduct was willful and malicious is the ultimate fact issue in this case to be determined by the jury. If proven, Appellant is subject to individual liability under a plethora of Texas common law.

In fact, there are a myriad of cases in Texas holding governmental employees personally liable for their actions.[4] Official immunity is not qualified immunity, it is merely an ***affirmative defense*** to liability, another question to be submitted to the jury.[5] *See City of Lancaster v.*

---

[4] *See e.g. Campbell v. Jones*, 264 S.W.2d 425, 427 (Tex. 1954) (officers are held liable when they have acted willfully or maliciously); *Kelly v. Galveston County*, 520 S.W.2d 507, 513 (Tex. Civ. App. – Galveston 1975, no writ) (government officials can be held personally liable if they have exceeded the legitimate bounds of their office) citing *Borger Indepen. School Dist. v. Dickson*, 52 S.W.2d 505 (Tex. Civ. App. – Amarillo 1932, writ ref'd n.r.e.); *Baker v. Story*, 621 S.W.2d 639, 643 (Tex. Civ. App. – San Antonio 1981, writ ref'd n.r.e.) (public servants should not be granted immunity from liability for all departures from the standard of conduct applicable to ordinary persons); *see also City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994).
[5] The burden is on the defendant to establish all elements of the defense. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994).

12

*Chambers,* 883 S.W.2d 650, 653 (Tex. 1994); *see Boozier v. Hambrick,* 846 S.W.2d 593, 597 (Tex. App. – Houston [1st Dist] 1993, no writ). Government officials are only entitled to immunity from suits arising out of the good faith performance of their discretionary duties and if they are acting within the scope of their authority. *Id.* Where a governmental employee acts "willfully or maliciously", they are not entitled to immunity and are personally liable. *See Campbell v. Jones,* 264 S.W.2d 425, 427 (Tex. 1954); *see Russell v. Edgewood Independent School Dist.,* 406 S.W.2d 249, 252 (Tex. Civ. App. – San Antonio 1966, writ ref'd n.r.e.).

The fact that David Mauk is a government official does not automatically make him immune to suit. Because official immunity is only an affirmative defense to liability, Mr. Mauk will have to show that he was acting (1) within his discretionary duties; (2) in good faith; and (3) within the scope of his authority. Again, this is the ultimate fact issue to be decided by the jury.

## IV. Objection to Draft Report; Appellant's Appendix 2

Attached to Appellant's Brief as "Appendix 2" is a purported "draft" report by David Mauk. Appellees object to the inclusion of this document and Appellant's attempt to reference an unauthenticated document which is not a part of the record in this case. Appellees address their evidentiary objections to this document in more detail in a separate filing with this Honorable Court, which Appellees incorporate by reference herein.

The "draft" report which Appellant attempts to tout as dispositive evidence, for the first time on appeal, has no identifying markers and was not timely produced in response to Appellant's written discovery. In fact, the document was produced to Appellees' counsel shortly before Appellant's November 12, 2014 deposition, *after* Appellant had filed his second Amended Motion to Dismiss. At his deposition, Appellant was questioned about the document but was unable to properly explain or identify the genesis of the document. (Mauk Deposition

13

pg. 122-128). Appellant stated, "...You can see that it is a draft, because it does not have District markings. It is not branded as being from the District. It is not signed. It doesn't have anything attributable to the District." (Mauk Deposition pg. 94, ln. 1-5). The timing of its production and the fact that this document cannot be in any way authenticated or verified, even by Appellant, certainly calls into question the veracity of this evidence and renders it nothing more than inadmissible hearsay. *See* TEX. R. EVID. 802 & 901.

Interestingly, the most inflammatory remark contained in the alleged "draft", the statement referring to Robert Rae Powell's actions as "borderline criminal", was omitted from the final report of the Board. (C.R. vol. 2, 33-37). One can only assume this was because there was no basis to make such statement and the government unit made no such finding. This fact lends even more support to Appellees' argument that the defamatory statements of David Mauk fell outside the course and scope of his duties as General Manager and did not reflect the finding or resolution of the Bandera County Groundwater District and River Authority.

Finally, as admitted by Appellant in his Brief, the purported "draft" report contains only some of the disputed statements. It does not contain them all and is not some sort of smoking gun in this case, as Appellant would have this Court believe. This document was not referenced in Appellant's first Motion to Dismiss, was not produced in response to Appellees' Request for Production and was not included in Appellant's second Amended Motion to Dismiss. (C.R. vol. 1, 23-25; C.R. vol. 2, 1-214). At no point in the last 25 months has this document been made a part of the record. (C.R. vol. 1; C.R. vol. 2; R.R. 1-53 (Nov. 20, 2014)). This document has not been and cannot be properly authenticated. It is not properly considered by this Court and it in no way precludes Appellant's personal liability for his own intentional conduct. Public employees, like agents generally, have always been individually liable for their own torts, even

14

when committed in the course of employment. *Franka v. Velasquez*, 332 S.W.3d 367, 382-383 (Tex. 2011).

## CONCLUSION

David Mauk, as an individual, made repeated slanderous remarks to the local newspapers in a blatant attempt to defame Robert Rae Powell and Pipe Creek Water Well to the local community. These actions were willful, malicious, made in bad faith, and far exceeded the scope of any discretionary duties David Mauk may have as an employee of a governmental unit. While it may be argued by Appellant that his discretionary duties include communication with media, slander *per se* and other similar tortious conduct can, by definition, never be in good faith.

Additionally, David Mauk's comments to the *Bandera County Courier* and *Bandera Bulletin* in no way reflect the position or findings of the Bandera County Groundwater District and River Authority and cannot be considered "professional contacts" within the scope of his employment. Consequently, this suit could not have been brought against the governmental unit and David Mauk is not entitled to be dismissed from this lawsuit under Texas Civil Practice & Remedies Code § 101.106(f).

Ultimately, whether or not Appellant acted within the course and scope of his duties and in good faith is a central fact issue to be submitted to and determined by the jury. Appellant's repeated attempts to have this case summarily dismissed is nothing more than an effort to have the court summarily rule on Appellant's affirmative defense and drive up the cost of litigation, a textbook defense tactic. Both trial courts recognized this and properly denied Appellant's first and second Motions to Dismiss. This interlocutory appeal should likewise be denied and this matter should be permitted to proceed to trial on the merits.

15

## PRAYER

Appellees, PIPE CREEK WATER WELL, LLC and ROBERT RAE POWELL pray that this Court affirm the order of the trial court, tax all costs of this appeal against Appellant, and grant PIPE CREEK WATER WELL, LLC and ROBERT RAE POWELL any other relief, in law or equity, to which they may be justly entitled.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief conforms to Rule 9.4 of the Texas Rules of Appellate Procedure.

_____
Megan H. Kucera

## CERTIFICATE OF SERVICE

I hereby certify by my signature below that a true and correct copy of the foregoing has been served by:

___ Certified Mail Return Receipt Requested
___ First Class Mail
_X_ Telecopier and/or
___ Hand-delivery
___ EService

To the following:

>   William M. McKamie
>   Adolfo Ruiz
>   McKamie Kruger, LLP
>   941 Proton Road
>   San Antonio, Texas 78258
>   Telecopier: (210) 546-2130
>   adolfo@mckamiekrueger.com

On the 27th day of March, 2015.

_____
Megan H. Kucera

16

**APPENDIX**

A.  June 10, 2013 Order on Defendant's Motion to Dismiss Pursuant to Tex. Civ. Prac. Rem. Code § 101.106 signed by the Honorable Cathleen Stryker

B.  December 8, 2014 Order Denying Defendant's Amended Motion to Dismiss for Lack of Jurisdiction (Plea to the Jurisdiction) - Tex. Civ. Prac. & Rem. Code 101.106(f) signed by the Honorable Richard Price

C.  Plaintiffs' Third Amended Petition

D.  Plaintiffs' Response to Defendant's Motion to Dismiss

E.  Plaintiffs' First Amended Response to Defendant's Motion to Dismiss and Objections to Defendant's Evidence

F.  Excerpts from David Mauk's November 12, 2014 Deposition

06/24/2013 MON 15:32 FAX

05/17/2013 15:44

05/06/2013 MON 11:12 FAX

(FAX)

Ø008/011

P.007/010

Ø008/012

CAUSE NO. 2013-CI-00386

| | | |
|---|---|---|
| PIPE CREEK WATER WELL, LLC and ROBERT RAE POWELL, | § § § | IN THE DISTRICT COURT |
| *Plaintiffs* | § § | |
| v. | § § | 408TH JUDICIAL DISTRICT |
| DAVID MAUK | § § | |
| *Defendant.* | § § | BEXAR COUNTY, TEXAS |

## ORDER ON DEFENDANT'S MOTION TO DISMISS PURSUANT TO TEX. CIV. PRAC. REM. CODE §101.106

Came on before this Court on April 22, 2013, was Defendant's Motion to Dismiss pursuant to Tex. Civ. Prac. Rem. Code §101.106. Having considered the Motion, the submissions on file, the applicable law and the argument of counsel, the Court finds that Defendant's Motion to Dismiss should be DENIED WITHOUT PREJUDICE TO REFILING THE SAME.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss pursuant to Tex. Civ. Prac. Rem. Code §101.106 is DENIED WITHOUT PREJUDICE TO REFILING THE SAME.

JUN 1 0 2013

SIGNED THIS _____ DAY OF _____, 2013.

Cathleen M. Stryker
Presiding Judge
224th District Court

JUDGE CATHY STRYKER

Order Denying Defendant's Mt to Dismiss§101.106    Page 1 of 2

EXHIBIT
A
PENGAD 800-631-6989

06/24/2013 MON 15:32 FAX

05/17/2013 15:44

05/06/2013 MON 11:12 FAX

(FAX)

☑009/011

P.008/010

☑009/012

AGREED AS TO FORM:

LAW OFFICES OF KEITH P. MILLER, PC
14350 Northbrook, Suite 150
San Antonio, Texas 78232
210-524-9040 Telephone
210-267-2982 Facsimile

Keith P. Miller
State Bar 14093725
Megan H. Kucera
State Bar No. 24076449
ATTORNEYS FOR PLAINTIFFS

MCKAMIE KRUEGER & KNIGHT, LLP
941 Proton Road
San Antonio, Texas 78258
210-546-2122 Telephone
210-546-2130 Facsimile

William M. McKamie
State Bar No. 13686800
Adolfo Ruiz
State Bar No. 17385600

ATTORNEYS FOR DEFENDANT

CAUSE NO. 2013-CI-00386

| | | |
|---|---|---|
| PIPE CREEK WATER WELL, LLC. and ROBERT RAE POWELL, | § § § | IN THE DISTRICT COURT |
| Plaintiffs | § § | |
| v. | § § | 408TH JUDICIAL DISTRICT |
| DAVID MAUK | § § | |
| Defendant. | § | BEXAR COUNTY, TEXAS |

## ORDER DENYING DEFENDANT'S AMENDED MOTION TO DISMISS FOR LACK OF JURISDICTION (PLEA TO THE JURISDICTION)-Tex. Civ. Prac. & Rem. Code §101.106(f)

On November 20, 2014 the Court considered the Defendant's Amended Motion to Dismiss For Lack of Jurisdiction (Plea to the Jurisdiction)-Tex. Civ. Prac. Rem. Code §101.106(f) and Plaintiffs' Response thereto, and after considering the pleadings, the response, the affidavits, any discovery filed, and arguments of counsel, finds that the Motion should be DENIED.

IT IS THEREFORE ORDERED that the Defendant's Amended Motion to Dismiss For Lack of Jurisdiction (Plea to the Jurisdiction)-Tex. Civ. Prac. Rem. Code §101.106(f) is DENIED.

Signed on \_\_\_\_\_DEC - 8 2014\_\_\_\_\_, 2014.

JUDGE RICHARD PRICE

Pipe Creek\Pleadings\3338\Order Denying MTD   - 1 -


EXHIBIT
B

APPROVED AS TO FORM ONLY:

KEITH P. MILLER
State Bar No. 14093725
MEGAN H. KUCERA
State Bar No. 24076449
Law Offices of Keith P. Miller, P.C.
Independence Plaza II
14350 Northbrook, Suite 150
San Antonio, Texas 78232
Tel: (210) 524-9040
Fax: (210) 267-2982
Attorneys for Plaintiffs, Pipe Creek Water
Well, LLC and Robert Rae Powell

WILLIAM M. MCKAMIE
State Bar No. 13686800
mick@mckamiekrueger.com
ADOLFO RUIZ
State Bar No. 17385600
adolfo@mckamiekrueger.com
McKamie Krueger, LLP
941 Proton Road
San Antonio, Texas 78258
Tel: (210) 546-2122
Fax: (210) 546-2130
Attorneys for Defendant,
David Mauk

FILED
DONNA KAY McKINNEY
DISTRICT CLERK
BEXAR COUNTY

CAUSE NO. 2013-CI-00386

2013 JUL 30 PM 3: 01

| | | |
|---|---|---|
| PIPE CREEK WATER WELL, LLC | § | DEPUTY IN THE DISTRICT COURT |
| and ROBERT RAE POWELL | § | |
| | § BY | |
| VS. | § | 408TH JUDICIAL DISTRICT |
| | § | |
| | § | |
| DAVID MAUK | § | BEXAR COUNTY, TEXAS |

## PLAINTIFFS' THIRD AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW PC DRILLING AND SERVICE, LLC d/b/a/ PIPE CREEK WATER WELL, LLC and ROBERT RAE POWELL and complains of DAVID MAUK and for cause of action would respectfully show unto the Court as follows:

### I.
### DISCOVERY LEVEL

Discovery in this case is intended to be conducted under Level 2 of Rule 190.3 of the Texas Rules of Civil Procedure.

### II.
### PARTIES

Plaintiff, PC DRILLING AND SERVICE, LLC d/b/a/ PIPE CREEK WATER WELL, LLC is a Texas corporation with its principal place of business in Kendall County, Texas.

Plaintiff, ROBERT RAE POWELL, is an individual residing in Bexar County, Texas.

Defendant, DAVID MAUK, is an individual residing in Kerr County, Texas.



EXHIBIT
C

## III.
## JURISDICTION AND VENUE

3.1 The acts, events, and omissions giving rise to the tort which is the subject of this suit occurred in the state of Texas.

3.2 Venue is proper in Bexar County, Texas under the Texas Civil Practice and Remedies Code § 15.017 because, at Plaintiff's election, a suit for damages for libel shall be brought and can only be maintained in the county in which Plaintiff resided at the time of the accrual of the cause of action. CIV. PRAC. REM. CODE § 15.017 (Vernon 2012).

3.3 The relief sought is within the jurisdictional limits of this court.

3.4 Accordingly, jurisdiction and venue are proper in the District Courts of Bexar County, Texas.

## IV.
## FACTS

4.1 Plaintiff, ROBERT RAE POWELL, is the CEO of PC DRILLING AND SERVICE, LLC d/b/a/ PIPE CREEK WATER WELL, LLC. PC DRILLING AND SERVICE, LLC d/b/a/ PIPE CREEK WATER WELL, LLC drills water wells throughout South Texas in the ordinary course of business. In November, 2012, PC DRILLING AND SERVICE, LLC d/b/a/ PIPE CREEK WATER WELL, LLC was engaged by a particular landowner to drill a water well in Bandera County, Texas. The well was ultimately drilled by a state licensed water well driller named Bryce Wallace.

4.2 Sometime thereafter, it was discovered that the well drilled by Bryce Wallace had collapsed. In accordance with state and local regulations, ROBERT RAE POWELL and PC DRILLING AND SERVICE, LLC d/b/a/ PIPE CREEK WATER WELL, LLC drilled a new water well and plugged the existing collapsed water well.

4.3 During the summer of 2012, the Bandera County River Authority and Groundwater District began an investigation of the collapse of the first water well.

4.4    Thereafter, Defendant, DAVID MAUK, acting as an individual and outside the course and scope of his duties as General Manager for the Bandera County River Authority and Groundwater District, with knowledge and intent that the statements be republished, began making defamatory and disparaging statements to reporters for the *Bandera County Courier* and *Bandera Bulletin* regarding ROBERT REA POWELL as an individual and about PC DRILLING AND SERVICE, LLC d/b/a/ PIPE CREEK WATER WELL, LLC. Those statements were published by the newspapers and widely circulated. The statements were malicious in nature and contained egregious distortions of the facts including the following statements:

- Pipe Creek Water Well displayed "complete contempt and total disregard for district and state rules."

- The drill site "looked like the [Plaintiffs] had walked away and abandoned the well."

- "The actions of [Plaintiffs] seem to rise above simple incompetence and likely border on criminal violations."

Further, Defendant specifically represented that Plaintiffs were barred from drilling water wells in Bandera County, despite the fact that the Bandera County Groundwater District and River Authority has no authority to take such an action and had not attempted to do so. Finally, in a statement that was clearly meant to imply that Plaintiffs had knowingly or intentionally taken advantage of or victimized an individual who was elderly and disabled, Defendant also made the following statement to the *Bandera County Courier*:

"It is very troubling that the victim of [Plaintiffs] actions, Mr. Hayes, of [sic] both elderly and disabled... We want to protect people of the district from being taken advantage of."

## V.
## FIRST CAUSE OF ACTION: DEFAMATION

5.1    A statement is defamatory if the words tend to injure a person's reputation, exposing the

person to public hatred, contempt, ridicule, or financial injury. *Henriquez v. Cemex Mgmt., Inc.,* 177 S.W.3d 241, 252 (Tex. App. – Houston [1st Dist.] 2005, pet. denied).

5.2   Slander is defined as a defamatory statement orally communicated or published to a third party without explanation or excuse that is either defamatory in itself or defamatory because it results in actual damages. *Rogers v. Cassidy,* 946 S.W.2d 439, 444 (Tex. App. – Corpus Christi 1997, no writ); *see Ramos v. Henry C. Beck Co.,* 711 S.W.2d 331, 333 (Tex. App. – Dallas 1986, no writ). Plaintiff, ROBERT RAE POWELL, in his individual capacity and Plaintiff, PC DRILLING SERVICES, LLC d/b/a PIPE CREEK WATER WELL, LLC, hereby bring suit against Defendant, DAVID MAUK, in his individual capacity, for the slanderous and disparaging statements made by him while acting outside the course and scope of his duties, to reporters for the *Bandera County Courier* and *Bandera Bulletin* regarding Plaintiff and Plaintiff's business.

5.3   Furthermore, Defendant made slanderous statements about Plaintiffs to reporters for the *Bandera County Courier* and *Bandera Bulletin.* Defendant acted with the knowledge and intent the statements could and likely would be republished by the two papers. An original publisher of a defamatory statement is vicariously liable for the republication of such statement by someone else if the republication was reasonably foreseeable. *See Wheeler v. Methodist Hosp.,* 95 S.W.3d 628 (Tex. App. – Houston [1st Dist.] 2002, no pet.). Therefore, Plaintiff, ROBERT RAE POWELL, in his individual capacity and Plaintiff, PC DRILLING SERVICES, LLC d/b/a PIPE CREEK WATER WELL, LLC, hereby bring suit against Defendant, DAVID MAUK, in his individual capacity, for the libelous statements republished by the *Bandera County Courier* and *Bandera Bulletin* regarding Plaintiff and Plaintiff's business. Plaintiffs seek general and exemplary damages.

## VI.
## SECOND CAUSE OF ACTION: SLANDER PER SE

6.1    A statement is slander per se if it injures one's business reputation or imputes one of committing a crime. *See Moore v. Waldrap,* 166 S.W.2d 559 (Tex. App. – San Antonio 1984, writ dism'd); *see Morrill v. Cisek,* 226 S.W.3d 545 (Tex. App. – Houston [1st Dist.] 2006, no pet.).

6.2    Plaintiff, ROBERT RAE POWELL, in his individual capacity and Plaintiff, PC DRILLING SERVICES, LLC d/b/a PIPE CREEK WATER WELL, LLC, hereby bring suit against Defendant, DAVID MAUK, in his individual capacity, for the slanderous statements made by him while acting outside the course and scope of his duties, with full knowledge and intent that the statements would be republished by the *Bandera County Courier* and *Bandera Bulletin,* which injured Plaintiffs' professional reputations and imputed Plaintiff ROBERT RAE POWELL of committing a crime for which Plaintiffs seek general and exemplary damages.

## VII.
## THIRD CAUSE OF ACTION: BUSINESS DISPARAGEMENT

7.1    To prevail on a claim of business disparagement, a plaintiff must establish that (1) the defendant published false and disparaging information, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff. *Forbes Inc. v. Granada Biosciences, Inc.,* 124 S.W.3d 167, 170 (Tex. 2003); *See Hurlbut v. Gulf Atl. Life Ins. Co.,* 749 S.W.2d 762, 766 (Tex. 1987); *See also* RESTATEMENT (SECOND) OF TORTS § 623A (1977); *See also* J. FLEMING, *THE LAW OF TORTS* AT 697-700 (5TH ED.1977).

7.2    Plaintiff, ROBERT RAE POWELL, in his individual capacity and Plaintiff, PC DRILLING SERVICES, LLC d/b/a PIPE CREEK WATER WELL, LLC, hereby bring suit against Defendant, DAVID MAUK, in his individual capacity, for business disparagement arising from the false and defamatory statements published by the Defendant while acting outside the course and scope of his duties. Defendant's egregious distortion of the facts when being interviewed by the *Bandera County*

*Courier* and *Bandera Bulletin* provides proof of his malice and intent to harm Plaintiffs' reputations. Plaintiffs seek general and exemplary damages.

## PRAYER

WHEREFORE, Plaintiffs request that the Defendant be cited to answer and appear herein, and that upon final hearing, Plaintiffs have judgment for the following:

1.  General and exemplary damages;

2.  Prejudgment interest as provided by law;

3.  Court costs;

4.  Post-judgment interest as provided for by law;

5.  Reasonable and necessary attorney's fees; and

6.  Such other and further relief to which Plaintiffs may be shown to be justly entitled to receive.

LAW OFFICES OF KEITH P. MILLER, PC
Independence Plaza II
14350 Northbrook, Suite 150
San Antonio, Texas 78232
Telephone No. (210) 524-9040
Telecopier No. (210) 267-2982

By: _____
KEITH P. MILLER
State Bar No. 14093725
MEGAN H. KUCERA
State Bar No. 24076449

## CERTIFICATE OF SERVICE

I hereby certify by my signature below that a true and correct copy of the foregoing has been served by:

___ Certified Mail Return Receipt Requested
___ First Class Mail
√ Telecopier
___ Hand-delivery

To the following:

William M. McKamie
Adolfo Ruiz
McKamie Kruger, LLP
941 Proton Road
San Antonio, Texas 78258
Telecopier: (210) 546-2130

On the 30th day of July, 2013.

Megan Kucera

| | | |
|---|---|---|
| PIPE CREEK WATER WELL, LLC and ROBERT RAE POWELL Plaintiffs, | § § § § | IN THE DISTRICT COURT |
| V. | § § | 408TH JUDICIAL DISTRICT |
| DAVID MAUK Defendant. | § § § | OF BEXAR COUNTY, TEXAS |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

NOW COME Plaintiffs, Pipe Creek Water Well, LLC and Robert Rae Powell, as Non-Movants herein, and file this Response to Defendant's Motion to Dismiss, and would respectfully show unto the Court as follows:

### A.
### INTRODUCTION

1.    Plaintiffs are PIPE CREEK WATER WELL, LLC, a corporation with its principal place of business in Kendall County, Texas and ROBERT RAE POWELL, an individual residing in Bexar County, Texas.  Defendant, DAVID MAUK, is an individual residing in Kerr County, Texas.

2.    Plaintiffs sued Defendant over specific slanderous statements Defendant made regarding the Plaintiffs to reporters from the *Bandera County Courier* and *Bandera Bulletin* newspapers.

### B.
### FACTS

3.    Plaintiff, ROBERT RAE POWELL is CEO of PC DRILLING AND SERVICE, LLC d/b/a/ PIPE CREEK WATER WELL, LLC.  PIPE CREEK WATER WELL, LLC drills water wells throughout South Texas in the ordinary course of business.  In November, 2011, PIPE CREEK WATER WELL, LLC was engaged by a particular landowner to drill a water well in Bandera



County, Texas. The well was ultimately drilled by a state licensed water well driller named Bryce Wallace.

4.     Sometime thereafter, it was discovered that the well drilled by Bryce Wallace had collapsed. In accordance with state and local regulations, PIPE CREEK WATER WELL, LLC drilled a new water well and plugged the existing collapsed water well.

5.     During the summer of 2012, the Bandera County River Authority and Groundwater District began an investigation of the collapse of the first water well. Thereafter, Defendant, DAVID MAUK, acting in bad faith and well outside the scope of his duties as General Manager for the Bandera County River Authority and Groundwater District, began making defamatory and disparaging statements to reporters for the *Bandera County Courier* and *Bandera Bulletin* regarding Plaintiffs. The statements were malicious in nature and contained egregious distortions of the facts.

## C.
## ARGUMENT AND AUTHORITIES

6.     Defendant, David Mauk, has filed a Motion to Dismiss this cause pursuant to Section 101.106(f) of the Texas Civil Practice and Remedies Code complaining that Plaintiffs have "elected to sue Bandera County Groundwater District and River Authority's employee and General Manger, David Mauk, for libel, slander and business disparagement for alleged statements published by David Mauk in his official capacity..." Defendant has also alleged that Plaintiffs, by simply mentioning Defendant's official title in attempt to clearly plead the facts to the court, somehow stipulated that they had elected to sue Defendant in his official capacity.

7.     This is a blatant distortion of Plaintiffs' pleadings. Plaintiffs explicitly and unmistakably sued Defendant, David Mauk, in his individual capacity. This is clearly evidenced by Plaintiffs' naming of David Mauk as an individual in the suit and without reference to his employment.

Plaintiffs specifically plead the opposing party as "David Mauk, an individual residing in Kerr County, Texas."

8.      Defendant further asserts that Section 101.106(f) of the Texas Civil Practice and Remedies Code simply requires the court dismiss a suit on Defendant's motion. However, Defendant has misapprehended the intent of Section 101.106(f). Section 101.106(f) only requires dismissal of a suit when the basis of the suit against a government employee is clearly within the scope of that employee's employment and if it could have been brought against the governmental unit. Civ. Prac. & Rem. Code § 101.106(f) (West 2012). However, the law requires Defendant to do more than merely assert that he was acting properly in the conduct of his office and that the suit could have been brought against the governmental unit. *Kelly v. Galveston County*, 520 S.W.2d 507, 513 (Tex. Civ. App. – Galveston 1975, no writ). It is Defendant's burden to conclusively show that he was acting within the scope of his discretionary authority and in good faith. *See id; see Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex. 1994). In the instant case, Defendant has provided no proof that he was properly acting within the scope of his authority and has provided no proof that the suit could have been brought against his governmental agency employer. Defendant simply makes the assertion he was acting within the scope of his employment in hopes to have this cause dismissed or gain "sovereign immunity." Nonetheless, Defendant is not entitled to have this cause dismissed and has confused the concepts of sovereign immunity and official immunity. Plaintiffs have purposely and thoughtfully sued Defendant in his *individual* capacity and it is Plaintiffs' unwavering position that Defendant was acting outside the scope of his authority and acting in bad faith.

9.      Whether a governmental employee enjoys immunity from liability for their torts is a question distinct from that of the immunity of the sovereign itself. *Baker v. Story*, 621 S.W.2d 639, 643 (Tex. Civ. App. – San Antonio 1981, writ ref'd n.r.e.). Texas courts have long declined to grant immunity

to all governmental employees. *Id.* Unlike the sovereign, governmental employees can absolutely be held individually liable for their actions and are not granted immunity from liability for all departures from the standard of conduct applicable to ordinary persons. *Kelly v. Galveston County,* 520 S.W.2d 507, 513 (Tex. Civ. App. – Galveston1975, no writ); *Borger Indepen. School Dist. v. Dickson,* 52 S.W.2d 505 (Tex. Civ. App. – Amarillo 1932, writ ref'd n.r.e.); *Baker v. Story,* 621 S.W.2d 639, 643 (Tex. Civ. App. – San Antonio 1981, writ ref'd n.r.e.). Governmental employees are always liable for their malicious conduct. *See id.*

10. Official immunity is only an affirmative defense to liability. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex. 1994); *Boozier v. Hambrick,* 846 S.W.2d 593, 597 (Tex. App. – Houston [1st Dist] 1993, no writ). Government officials may be entitled to official immunity from suits arising out of the performance of their (1) discretionary duties (2) in good faith as long as they are (3) acting within the scope of their authority. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex. 1994); *Boozier v. Hambrick,* 846 S.W.2d 593, 597 (Tex. App. – Houston [1st Dist] 1993, no writ). However, where a governmental employee acts "willfully or maliciously", they are not entitled to immunity and are personally liable. *See Campbell v. Jones,* 264 S.W.2d 425, 427 (Tex. 1954); *see Russell v. Edgewood Independent School Dist.,* 406 S.W.2d 249, 252 (Tex. Civ. App. – San Antonio 1966, writ ref'd n.r.e.).

11. In the instant case, Defendant, David Mauk, acted willfully, maliciously, and in bad faith, far exceeding the scope of his discretionary duties and authority. While it may be argued by Defendant that his discretionary duties include communication with media or the public, slander per se and other similar tortious conduct can never be in good faith. David Mauk, as an individual, made repeated slanderous remarks to the local newspapers in a blatant attempt to defame Robert Rae Powell and Pipe Creek Water Well to the local community. Defendant is not being sued for

communicating to the media and the public what actions were being taken against Plaintiffs by Defendant's governmental employer or the official position of Defendant's governmental employer. Defendant is being sued for the malicious and needless remarks he made, such as calling Plaintiffs criminals when Plaintiffs had committed no crime and Defendant's employer had taken no such position.

12. The purpose of sovereign and official immunity is to insulate the functioning of government from the harassment of litigation, not to protect erring officials. *Westfall v. Erwin*, 484 U.S. 292, 295 (1988); *Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex. 1994). Defendant, David Mauk, is an erring official who was properly sued in his individual capacity for his own intentional torts. David Mauk's comments to the *Bandera County Courier* and *Bandera Bulletin* in no way reflect the position or findings of the Bandera County Groundwater District and River Authority and consequently, this suit could not have been brought against the governmental unit. Civ. Prac. & Rem. Code § 101.106(f) (West 2012). Defendant is not entitled to a dismissal of this action.

PRAYER

**WHEREFORE,** Plaintiffs pray this Court will deny Defendant's Motion to Dismiss and will grant such other and further relief that may be awarded at law or in equity.

Respectfully submitted,
Law Offices of Keith P. Miller, P.C.
Independence Plaza II
14350 Northbrook, Suite 150
San Antonio, Texas 78232
Tel: (210) 524-9040
Fax: (210) 267-2982

By: _____
KEITH P. MILLER
State Bar No. 14093726

MEGAN H. KUCERA
State Bar No. 24076449
Attorney for Plaintiffs
Pipe Creek Water Well, LLC and Robert Rae Powell

## CERTIFICATE OF SERVICE

I hereby certify by my signature below that a true and correct copy of the foregoing has been served by:

___ Certified Mail Return Receipt Requested
___ First Class Mail
_x_ Telecopier
___ Hand-delivery

To the following:

William M. McKamie
Adolfo Ruiz
McKamie Kruger, LLP
941 Proton Road
San Antonio, Texas 78258
Telecopier: (210) 546-2130

On the 15th day of April, 2013.

Megan Kucera

NO. 2013-CI-00386

| | | |
|---|---|---|
| PIPE CREEK WATER WELL, LLC | § | IN THE DISTRICT COURT |
| and ROBERT RAE POWELL | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | 408TH JUDICIAL DISTRICT |
| | § | |
| DAVID MAUK | § | |
| Defendant. | § | OF BEXAR COUNTY, TEXAS |

## PLAINTIFFS' FIRST AMENDED RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND OBJECTIONS TO DEFENDANT'S EVIDENCE

NOW COME Plaintiffs, Pipe Creek Water Well, LLC and Robert Rae Powell, as Non-Movants herein, and file this Response to Defendant's Motion to Dismiss, and would respectfully show unto the Court as follows:

### A.
### INTRODUCTION

1.    Plaintiffs are PIPE CREEK WATER WELL, LLC, a corporation with its principal place of business in Kendall County, Texas and ROBERT RAE POWELL, an individual residing in Bexar County, Texas. Defendant, DAVID MAUK, is an individual residing in Kerr County, Texas.

2.    Plaintiffs sued Defendant over specific slanderous statements Defendant made regarding the Plaintiffs to reporters from the *Bandera County Courier* and *Bandera Bulletin* newspapers.

3.    On April 22, 2013, the Honorable Judge Stryker heard Defendant's first Motion to Dismiss pursuant to Section 101.106(f) of the Texas Civil Practice and Remedies Code. Plaintiffs filed a Response to that Motion which Plaintiffs now fully adopt and incorporate herein. The Court denied Defendant's Motion.

1 - First Amended Response to Second Motion to Dismiss



4. On October 8, 2014, Defendant filed this second, Amended Motion to Dismiss for Lack of Jurisdiction pursuant to Section 101.106(f) of the Texas Civil Practice and Remedies Code.

## B.
## FACTS

5. Plaintiff, ROBERT RAE POWELL is CEO of PC DRILLING AND SERVICE, LLC d/b/a/ PIPE CREEK WATER WELL, LLC. PIPE CREEK WATER WELL, LLC drills water wells throughout South Texas in the ordinary course of business. In November, 2011, PIPE CREEK WATER WELL, LLC was engaged by a particular landowner to drill a water well in Bandera County, Texas. The well was ultimately drilled by a state licensed water well driller named Bryce Wallace.

6. Sometime thereafter, it was discovered that the well drilled by Bryce Wallace had collapsed. In accordance with state and local regulations, PIPE CREEK WATER WELL, LLC drilled a new water well and plugged the existing collapsed water well.

7. During the summer of 2012, the Bandera County River Authority and Groundwater District began an investigation of the collapse of the first water well. Thereafter, Defendant, DAVID MAUK, acting in bad faith and well outside the scope of his duties as General Manager for the Bandera County River Authority and Groundwater District, began making defamatory and disparaging statements to reporters for the *Bandera County Courier* and *Bandera Bulletin* regarding Plaintiffs. The statements were malicious in nature and contained egregious distortions of the facts.

## C.
## ARGUMENT AND AUTHORITIES

8. Defendant, David Mauk, has filed his second Motion to Dismiss this cause pursuant to Section 101.106(f) of the Texas Civil Practice and Remedies Code complaining that Plaintiffs have failed to provide evidence that Defendant was acting outside the course and scope of his duties and

2 - First Amended Response to Second Motion to Dismiss

alleging that Defendant acted within the course and scope of his duties and that Plaintiffs' suit could have been brought against the Bandera County Groundwater District and River Authority. In accordance therewith, Defendant relies on various documents which are rife with speculation and hearsay and touts them as dispositive evidence in this matter.

*Plaintiffs sued Defendant, David Mauk in his individual capacity.*

7.      At the outset, it is important to note that Plaintiffs explicitly and unmistakably sued Defendant, David Mauk, in his individual capacity. This was clearly evidenced by Plaintiffs' naming of David Mauk as an individual in the suit and without reference to his employment. Plaintiffs specifically named Defendant in their Original Petition as follows:

"Defendant, David Mauk, an *individual* residing in Kerr County, Texas..."

Any reference to David Mauk as General Manager for the Bandera County Groundwater District and River Authority was solely for the purpose of providing a factual basis for the court and to plead sufficient facts to give fair notice to Defendant as to the subject matter of this lawsuit. At Defendant's behest, Plaintiffs amended their pleading to make this fact even clearer, dutifully complying with the Court's Order on Defendant's Special Exemptions. Defendant's assertion that Plaintiffs' initial pleading of the facts was some sort of judicial admission that Defendant was sued in his official capacity is a tortured and patently erroneous reading of Plaintiffs' pleading. Defendant made this exact argument at the hearing on Defendant's first Motion to Dismiss and clearly, the Court did not find it to be persuasive. (See Defendant's Motion to Dismiss – Tex. Civ. Prac. Rem. Code § 101.106(f) on file herein). Defendant's reurging of this argument is nothing more than an attempt to secure a different ruling from a different judge.

3 - First Amended Response to Second Motion to Dismiss

8.      In this second Motion to Dismiss. Defendant again asserts that Section 101.106(f) of the Texas Civil Practice and Remedies Code requires the court to dismiss this suit as a matter of law. However, Defendant misapprehends the nature of Section 101.106 and the policy behind it.

9.      Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages. *Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 374 (Tex. 2006). In 2003, the legislature amended the Texas Tort Claims Act to include Section 101.106. *Mission Consol. Independent School Dist. v. Garcia,* 253 S.W.3d 653, 656 (Tex. 2008). The apparent intent was to force claimants to "decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable, thereby reducing the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery." *Id.* at 657. Thus, Section 101.106(f) requires. on a governmental employee's motion. dismissal of a suit when (1) the basis of the suit against a government employee is within the general scope of that employee's employment and (2) the suit could have been brought against the governmental unit. Civ. Prac. & Rem. Code § 101.106(f) (West 2014). The practical effect of the statute is that a plaintiff is no longer able to include every tortfeasor of liability. *Huntsville Independent School Dist. v. Briggs,* 262 S.W.3d 390 (Tex. App. – Waco 2008, pet. denied). Section 101.106 effectively narrows the issues for trial and reduces delay and duplicative litigation costs. *Garcia,* 253 S.W.3d at 657. However, the provision in no way forecloses a suit against a governmental employee or requires that a suit against a government employee to be

automatically dismissed on the mere assertion a defendant is acting within the scope of his employment as Defendant would have the Court believe.

*It is Defendant's burden to show he was acting in his official capacity.*

9.     It is has been Plaintiffs' unwavering position in this suit that Defendant, David Mauk acted in his individual capacity and outside the course and scope of his duties as General Manager for the Bandera County River Authority and Groundwater District when he willfully and maliciously made defamatory and disparaging statements, based solely on a personal vendetta, gross distortions of fact, and an incompetent and incomplete investigation. To allege that these actions are within the province of his duties as General Manager is frankly, preposterous. While it may be argued by Defendant that his duties include communication with media, slander per se and other similar tortious conduct by definition can never be in good faith and removes Defendant from the "general scope of [his] employment."

10.     Furthermore, Defendant misstates the burden in a case such as this. The law requires Defendant to do more than merely assert that he was acting properly in the conduct of his office and that the suit could have been brought against the governmental unit. *Kelly v. Galveston County,* 520 S.W.2d 507, 513 (Tex. Civ. App. – Galveston 1975, no writ). It is actually *Defendant's burden* to conclusively show that he was acting within the scope of his discretionary authority and in good faith. *See id; see Kassen v. Hatley,* 887 S.W.2d 4, 8 (Tex. 1994).

11.     In the instant case, Defendant has provided no evidence, let alone conclusive evidence, that he was properly acting within the scope of his authority and has provided no proof that he was acting in good faith. In fact, Defendant has wholly failed to make any meaningful response to Plaintiffs written discovery and has refused to submit to an oral deposition in this case. (See attached Exhibits

5 - First Amended Response to Second Motion to Dismiss

"A" and "B"). Defendant wishes to simply make the assertion he was acting within the scope of his employment and have this cause dismissed or gain immunity. However, such conclusory assertions are not enough. Defendant has not met his burden and is not entitled to a dismissal under Section 101.106(f) of the Texas Civil Practice and Remedies Code.

*Objection to Bandera County River Authority & Groundwater District Job Description of General Manager.*

12. Attached to his second Motion to Dismiss as "Attachment 1" to Exhibit "I" is an affidavit of a Jeff Jilson and purported job description for the position held by David Mauk at the Bandera County River Authority & Groundwater District. Plaintiffs object to this introduction of this document under Texas Rules of Evidence of 901 and 902. This document has not been properly authenticated. *See* Tex. R. Evid. 901 & 902. Rule 901 requires that an item be properly identified and authenticated as a condition precedent to admissibility. *Id.* Rule 902 requires that any business records affidavit comport with Rule 803 and generally follow the form of 902(b). The affidavit of Jeff Jilson does not meet the requirements of 902(b) and the attached document is nothing more than hearsay.

13. Furthermore, the purported Job Description attached to Defendant's Exhibit "I" is in no way dispositive of this matter. Defendant is not being sued for communicating to the media and the public what actions were being taken against Plaintiffs by Defendant's governmental employer or the official position of Defendant's governmental employer. Defendant is being sued for the malicious, unnecessary, and untruthful remarks he made. This distinction is key. Additionally, even if communicating with reporters is in fact a part of Defendant's role as General Manager, it does not preclude Defendant's personal liability for his own intentional conduct. Public employees, like

6 - First Amended Response to Second Motion to Dismiss

agents generally, have always been individually liable for their own torts, even when committed in the course of employment. *Franka v. Velasquez*, 332 S.W.3d 367, 382-383 (Tex. 2011).

*David Mauk is not immune from suit.*

14.     Texas courts have long declined to grant immunity to governmental employees. *Baker v. Story*, 621 S.W.2d 639, 643 (Tex. Civ. App. – San Antonio 1981, writ ref'd n.r.e.). Unlike the sovereign, governmental employees can be held individually liable for their actions. *Kelly v. Galveston County*, 520 S.W.2d 507, 513 (Tex. Civ. App. – Galveston 1975, no writ); *Borger Indepen. School Dist. v. Dickson*, 52 S.W.2d 505 (Tex. Civ. App. – Amarillo 1932, writ ref'd n.r.e.); *Baker v. Story*, 621 S.W.2d 639, 643 (Tex. Civ. App. – San Antonio 1981, writ ref'd n.r.e.). Governmental employees are liable for all departures from the standard of conduct applicable to ordinary persons and governmental employees are always liable for their malicious conduct. *See id.*

15.     Plaintiffs have continually and repeatedly asserted that Defendant's conduct was willful and malicious and made outside the scope of his duties. If proven, Defendant is subject to individual liability under a plethora of Texas common law. This is the ultimate fact issue in this case to be determined by the jury.

*This case could not have been brought against the governmental unit.*

16.     As noted above, Defendant was not sued for communicating to the media regarding the actions being taken by his governmental employer or the fact that his employer had issued a preliminary finding of violations of its rules. Defendant is being sued for the malicious and needless remarks he made thereafter. For example, Defendant was quoted saying Plaintiff's actions rose to the level of criminal violations. Defendant has failed to produce evidence which in any way indicates that the Bandera County Groundwater District and River Authority's position or finding

7 - First Amended Response to Second Motion to Dismiss

that Plaintiffs actions rose to the level of being criminal in nature. Furthermore, Defendant has failed to produce anything showing his employer pursued any sort of criminal investigation or criminal complaint over this matter. Because the slanderous comments such as this in no way reflect the actual position or findings of the Bandera County Groundwater District and River Authority, this suit could not have been brought against the governmental unit. Civ. Prac. & Rem. Code § 101.106(f) (West 2014). Once again, Defendant has failed to meet the requirements of Section 101.106(f) and is not entitled to a dismissal of this action. *Id.*

*Official immunity is only a defense.*

17. Finally, it is important to note that there are a myriad of cases in Texas holding governmental employees personally liable for their actions. Official immunity is not qualified immunity, only an affirmative defense to liability. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994); *Boozier v. Hambrick*, 846 S.W.2d 593, 597 (Tex. App. - Houston [1st Dist] 1993, no writ). Government officials may be entitled to official immunity from suits arising out of the performance of their (1) discretionary duties (2) in good faith as long as they are (3) acting within the scope of their authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994); *Boozier v. Hambrick*, 846 S.W.2d 593, 597 (Tex. App. – Houston [1st Dist] 1993, no writ). However, where a governmental employee acts "willfully or maliciously", they are not entitled to immunity and are personally liable. *See Campbell v. Jones*, 264 S.W.2d 425, 427 (Tex. 1954); *see Russell v. Edgewood Independent School Dist.*, 406 S.W.2d 249, 252 (Tex. Civ. App. – San Antonio 1966, writ ref'd n.r.e.). The fact that David Mauk is a government official does not automatically make him immune to suit. If he acted "willfully or maliciously", he is personally liable. Again, this is a fact issue for the jury to decide.

8 - First Amended Response to Second Motion to Dismiss

## Conclusion.

18. In the instant case, Defendant, David Mauk, acted willfully, maliciously, and in bad faith, far exceeding the scope of his discretionary duties and authority. While it may be argued by Defendant that his discretionary duties include communication with media or the public, slander per se and other similar tortious conduct can never be in good faith and are very clearly outside the scope of his employment. David Mauk, as an individual, made repeated slanderous remarks to the local newspapers in a blatant attempt to defame Robert Rae Powell and Pipe Creek Water Well to the local community. Defendant, David Mauk, is an erring official who was purposely sued in his individual capacity for his own intentional torts. David Mauk's comments to the *Bandera County Courier* and *Bandera Bulletin* in no way reflect the position or findings of the Bandera County Groundwater District and River Authority and consequently, this suit could not have been brought against the governmental unit. Civ. Prac. & Rem. Code § 101.106(f) (West 2014). Defendant is not entitled to a dismissal of this action.

## PRAYER

**WHEREFORE**, Plaintiffs pray this Court will deny Defendant's Motion to Dismiss and will grant such other and further relief that may be awarded at law or in equity.

9 - First Amended Response to Second Motion to Dismiss

Respectfully submitted,
Law Offices of Keith P. Miller, P.C.
Independence Plaza II
14350 Northbrook, Suite 150
San Antonio, Texas 78232
Tel: (210) 524-9040
Fax: (210) 267-2982


*Megan H. Kucera/*

By: _____
KEITH P. MILLER
State Bar No. 14093725
MEGAN H. KUCERA
State Bar No. 24076449
Attorney for Plaintiffs
Pipe Creek Water Well, LLC and Robert Rae Powell

## CERTIFICATE OF SERVICE

I hereby certify by my signature below that a true and correct copy of the foregoing has been served by:

\_\_\_ Certified Mail Return Receipt Requested
\_\_\_ First Class Mail
_x_ Telecopier
\_\_\_ Hand-delivery

To the following:

William M. McKamie
Adolfo Ruiz
McKamie Kruger, LLP
941 Proton Road
San Antonio, Texas 78258
Telecopier: (210) 546-2130

On the 5th day of November, 2014.

Motion to Dismiss

**MARY ORALIA BERRY, CSR, RMR, CRR**
**OFFICIAL COURT REPORTER**
**285TH DISTRICT COURT**

100 Dolorosa
285th District Court          Phone: (210)335-2289
Bexar County Courthouse     Fax:    (210)335-0868
San Antonio, Texas 78205    Hearing Date: 1-20-14


*Megan H. Kucera/*

_____
Megan H. Kucera

10 - First Amended Response to Second Motion to Dismiss

| | | |
|---|---|---|
| PIPE CREEK WATER WELL, INC. and ROBERT RAE POWELL, | § § § § | IN THE DISTRICT COURT |
| *Plaintiffs* | § § | |
| v. | § § | 408TH JUDICIAL DISTRICT |
| DAVID MAUK | § § | |
| *Defendant.* | § § | BEXAR COUNTY, TEXAS |

## <u>DEFENDANT DAVID MAUK'S ANSWERS AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES</u>

Defendant, **DAVID MAUK** serves his Answers and Objections to Plaintiff's First Set of Interrogatories in conformity with Tex. R. Civ. P. 197.

Respectfully submitted,

**McKamie Krueger, LLP**
941 Proton Rd.
San Antonio, Texas 78258
210.546.2122
210.546.2130 (Fax)

_____
William M. McKamie
State Bar No. 13686800
Adolfo Ruiz
State Bar No. 17385600

**ATTORNEYS FOR DEFENDANT
DAVID MAUK**


PLAINTIFF'S EXHIBIT A

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of *Defendant David Mauk's Objections and Answers to Plaintiffs' First Set of Interrogatories* has been served according to the Texas Rules of Civil Procedure, in the manner indicated below on April 1, 2013, addressed to:

Keith P. Miller
State Bar 14093725
Megan H. Kucera
State Bar No. 24076449
Law Offices of Keith P. Miller, PC
14350 Northbrook, Suite 150
San Antonio, Texas 78232
Telephone: 210.524.9040

**Via Hand Delivery**

WILLIAM M. MCKAMIE
ADOLFO RUIZ

2

# INTERROGATORIES

1. Please state the full name, address, telephone number, date of birth, driver's license number, social security number, and occupation of all persons providing information in answering these interrogatories.

**ANSWER:**

Defendant objects to this interrogatory in that it requests the social security number and driver's license number of the person(s) providing information in answering this interrogatory which violates the personal and privacy rights of individuals under the Texas Constitution, U.S. Constitution and under Texas Law. Defendant further objects in that such a request will not lead to the discovery of admissible evidence. Defendant further objects to this interrogatory in that it impermissibly inquires into information protected by the attorney/client communication privilege in violation of Rule 192.5. Defendant also objects in that this interrogatory impermissibly seeks information covered by the investigative privilege and the anticipation of litigation privilege in violation of Rule 192.5. Defendant also objects in that this interrogatory impermissibly inquires into the Defendant's attorney's work product protected by the attorney work product privilege in violation of Rule 192.5(a). However, without waiving the above-referenced objections, please see below.

David Mauk
General Manager
Bandera County River Authority & Groundwater District
P.O. Box 177
440 FM 3240
(830) 796 7260

2. Identify all discoverable, consulting experts, that is, consulting experts whose work has been reviewed by testifying expert. For each expert named, provide the following information:
   a) The expert's name address and telephone number;
   b) The expert's current resume and bibliography;
   c) The facts known to the expert that relate to or form the basis of the experts' mental impression and opinions formed or made in connection with the case regardless of when and how the factual information was acquired;
   d) The mental impressions or opinions of the expert formed or made in connection with the case and any methods used to derive them;
   e) Any bias of the expert; and
   f) Identify all documents and tangible things, including reports, models, or date compilations that have been provided to, reviewed by, or prepared by or for the expert, so that documents or tangible things can be properly sought by a request for production.

**ANSWER:**

Defendant objects to this interrogatory in that it is overly broad and burdensome. However, without waiving the foregoing objections, none at this time.

3.      Identify all experts who have first hand factual information about the case and provide a brief statement of each expert's connection with the case.

**ANSWER:**

Defendant objects to this interrogatory because it requests information about testifying experts, which is obtainable only through a request for disclosure under Texas Rule of Civil Procedure 194 or through a deposition of the expert. *See* Tex. R. Civ. P. 197.1. Defendant further objects to this interrogatory in that it requests information from any consulting experts Defendant may retain in this case, which is privileged. *General Motors Corp. v. Gale*, 951 S.W. 2d 469, 474 (Tex. 1997). Defendant further objects to this interrogatory in that it duplicates matters produced in response to a request for disclosure under Texas Rule of Civil Procedure 194.2.

4.      Identify every person who is expected to be called to testify at trial, including your experts.

**ANSWER:**

Defendant objects to this request to the extent it is duplicative of the information requested in Plaintiffs' Request for Disclosure, and Defendant refers to Plaintiffs to its Disclosure Responses. Defendant further objects to this request as improper and premature. *See Tex. Tech Univ. Heath Science Ctr. v. Schild*, 828, S.W. 2d 502, 504 (Tex. App. – El Paso 1992, org. proceeding). Defendant will provide a witness list in accordance with the scheduling order issued by the court, or at such other reasonable time as mutually agreed by the parties.

5.      Identify all lawsuits which you have been a party to in the last five (5) years.

**ANSWER:**

None.

6.      If you have ever been indicted, arrested, convicted, or accused, of a crime, state the day on which such accusation, indictment, conviction or arrest, nature of the charge and the charging entity.

**ANSWER:**

Defendant objects to this interrogatory in that it violates the personal and privacy rights

4

of individuals under the Texas Constitution, U.S. Constitution and under Texas Law. Defendant further objects in that such a request will not lead to the discovery of admissible evidence. However, without waiving the above-referenced objections, none.

7. State the factual basis behind your assertion that the Plaintiffs "wouldn't drill straight."

ANSWER:

Defendant objects to this interrogatory in that Plaintiffs' premise that the above-referenced assertion is attributable to Defendant is not correct. Defendant further objects to this interrogatory in that any alleged assertions are attributable to the Bandera County River Authority and Groundwater District (BCRAGD) and not Defendant. Subject to the foregoing objections, Defendant is not aware if the above-referenced assertion was made.

8. State the factual basis behind your assertion that the Plaintiffs are in or affiliated with a "gang" or involved in any sort of criminal or illicit activity.

ANSWER:

Defendant objects to this interrogatory in that Plaintiffs' premise that the above-referenced assertion is attributable to Defendant is not correct. Defendant further objects to this interrogatory in that any alleged assertions are attributable to BCRAGD and not Defendant. Subject to the foregoing objections, Defendant is not aware if the above-referenced assertion was made.

9. Identify any and all specific criminal laws or statutes which you allege Plaintiffs have in any way violated.

ANSWER:

Defendant objects to this interrogatory in that it requests a legal opinion. Defendant further objects to this interrogatory in that it is overbroad and burdensome with the request to identify "all specific" criminal laws or statutes. Defendant further objects to this interrogatory in that any alleged violations of any criminal law or statutes would be attributable to BCRAGD and not Defendant.

10. State the factual basis for your contention the alleged "actions of [Plaintiffs] seem to rise above simple incompetence and likely border on criminal violations."

ANSWER:

Defendant objects to this interrogatory in that Plaintiffs' premise that the contention of the alleged actions of the individuals involved "seem to rise above simple incompetence" is attributable to Defendant is not correct. The contention as stated in this response is attributed

5

to the BCRAGD after an investigation of Plaintiffs rule violations conducted by the BCRAGD and included in the Conclusion section of BCRAGD's official report. The factual basis of this contention is set forth in the body of the official report.

Defendant further objects to this interrogatory in that the alleged assertion by Defendant that Plaintiffs conduct "likely border on criminal violations" is not correct. The alleged assertion or any variation thereof, may have been included in a rough draft of the BCRAGD investigative report, but was not part of a BCRAGD's final report and was not made part of the official record. Defendant further objects in that this alleged contemplated contention is attributable to BCRAGD and not Defendant.

11. State the factual basis behind your assertion that the Plaintiffs are somehow taking advantage of or victimizing the "people of the district."

**ANSWER:**

Defendant objects to this interrogatory in that Plaintiffs' premise that the above-referenced assertion to include the quotation is attributable to Defendant is not correct. Defendant further objects to this interrogatory in that any alleged assertions are attributable to BCRAGD and not Defendant. Subject to the foregoing objections, Defendant is not aware if the above-referenced assertion was made.

12. State the factual basis behind your assertion that Plaintiffs somehow took advantage of a man "both elderly and disabled."

**ANSWER:**

Defendant objects to this interrogatory in that Plaintiffs' premise that Defendant made the assertion that, "Plaintiffs somehow took advantage of a man" is not correct. Defendant further objects to this interrogatory in that Plaintiffs' are selecting disjunctive portions of the BCRAGD report and comingling language not in the report. Defendant further objects to this interrogatory in that any alleged assertions are attributable to BCRAGD and not Defendant. Subject to the foregoing objections, Defendant is not aware if the above-referenced assertion together with the quote was made.

13. State the factual basis behind your assertion that the Plaintiffs did not take steps to rectify any issues with the Hayes Well.

**ANSWER:**

Defendant objects to this interrogatory in that Plaintiffs' premise that the above-referenced assertion is attributable to Defendant is not correct. Defendant further objects to this interrogatory in that any alleged assertions are attributable to BCRAGD and not Defendant. Subject to the foregoing objections, Defendant is not aware if the above-referenced assertion was made.

6

14.    State the factual basis for your assertion that it appeared Plaintiffs had "walked away or abandoned the well."

ANSWER:

Defendant objects to this interrogatory in that Plaintiffs' premise that the above-referenced assertion is attributable to Defendant is not correct. Defendant further objects to this interrogatory in that any alleged assertions are attributable to BCRAGD and not Defendant. Subject to the foregoing objections, Defendant is not aware if the above-referenced assertion was made, please refer to the BCRAGD official investigative report.

15.    State the factual basis for your assertion that the Plaintiffs displayed "complete contempt and total disregard for district and state rules."

ANSWER:

Defendant objects to this interrogatory in that Plaintiffs' premise that the above-referenced assertion is attributable to Defendant is not correct. Defendant further objects to this interrogatory in that any alleged assertions are attributable to BCRAGD and not Defendant. Defendant further objects to this interrogatory in that the above alleged assertion is not an exact quotation from BCRAGD's official investigative report.

16.    For each and every time you spoke to or in any way communicated with a journalist or reporter about the Plaintiffs, please identify:
    a) the name of the journalist or reporter;
    b) the media outlet through which that journalist or reporter is employed;
    c) the date of the communication;
    d) whether you or journalist or reporter initiated the communication; and
    e) the general nature of your communication with that journalist or reporter.

ANSWER:

Defendant objects to this interrogatory in that it falsely presumes or infers that Defendant gave an interview to a journalist or reporter, which is not correct. Defendant further objects to this interrogatory in that it is overly broad in its scope and burdensome. Plaintiffs do not identify the time frame that Defendant allegedly had communications with a journalist or reporter. Defendant further objects to this interrogatory in that the information the Plaintiffs seek is available from public records or the business records of the media outlet which the burden of deriving the answer from the records are substantially the same for both parties. *Tex. R. Civ. P. 197.2(c)*. However, without waiving the foregoing objections, Defendant acknowledges that journalists/reporters were in the audience of a public meeting of the BCRAGD Board held on October 4, 2012 and Defendant, in his official capacity as BCRAGD's General Manager, read portions of the BCRAGD's official investigative report to

7

the public attending the meeting. Further, without waiving the foregoing objections, a public information request was made by one or both of the Bandera County newspapers; please see Defendant's response to Plaintiffs' request for production.

8

## VERIFICATION

BEFORE ME, the undersigned authority, on this day personally appeared David Mauk, General Manager for the Bandera County River Authority and Groundwater District, known to me to be the person whose name is subscribed below, and who, being by me first duly sworn, on his oath deposed and said that he is authorized to sign this verification and he has read the answers contained in the above and foregoing Defendant, David Mauk's Answers and Objections to Plaintiffs' First Set of Interrogatories, and all factual statements contained in said document are within his personal knowledge and are true and correct.

David Mauk
General Manager
Bandera County River Authority
And Ground Water District

SUBSCRIBED AND SWORN TO before me on this the ____ day of _____, 2013, to certify which, witness my Hand and Seal of Office.

TOBA A. PEREZ WRIGHT
Notary Public, State of Texas
My Commission Expires
October 26, 2014

STATE OF Texas
COUNTY OF Bandera

The foregoing instrument was acknowledged before me this ____ day of ____ 2013, by David Mauk

Notary Public's Signature                Notary Name
My Commission Exp. ____



**McKamie Krueger, LLP**

941 Proton
San Antonio, Texas 78258
210-546-2122
210-546-2130
www.mckamiekrueger.com

October 17, 2014

**_Via Facsimile: 210-267-2982_**
Keith P. Miller
Megan H. Kucera
Law Offices of Keith P. Miller, PC
14350 Northbrook, Suite 150
San Antonio, Texas 78232

Re:    Cause No.2013-CI-00386; *Pipe Creek Water Well, LLC and Robert Rae Powell v. David Mauk; In the 408th Judicial District, Bexar County, Texas.*

Dear Counsel,

Enclosed please find the following document filed electronically with the court today:

1. Defendant's Motion to Abate Discovery and for Protection.

I am not in agreement with your request to make my client, David Mauk, available for deposition before the Court has an opportunity to rule on Defendant's Amended Motion to Dismiss for Lack of Jurisdiction (Plea to the Jurisdiction) 101.106(f) for the reasons set forth in the enclosed motion.

Please contact my Paralegal, Karen Jouett, to provide dates you will be available for a hearing on Defendant's Motion to Abate Discovery and for Protection.

Please let me know if you have any questions.

Sincerely,

Adolfo Ruiz

AR/ktj
Enclosure as stated.

**SAN ANTONIO**
941 Proton Rd.
San Antonio, Texas 78258
(210) 546-2122
Fax (210) 546-2130

**DALLAS**
2007 N. Collins Blvd., Suite 501
Richardson, Texas 75080
(214) 253-2600
Fax (214) 253-2626



PLAINTIFF'S EXHIBIT
B

not hire a lawyer if he felt like he had been wronged?

A. I think that would be something you should ask Mr. Hayes and his attorney.

Q. Could Mr. Hayes have sued them for breach of contract?

MR. RUIZ: Objection, form of question. Goes outside the -- goes outside the order of the court with regard to the jurisdictional issues that this deposition is limited to.

Q. (BY MS. KUCERA) You can answer --

MR. RUIZ: And I'll also --

Q. (BY MS. KUCERA) -- unless he tells --

MR. RUIZ: -- object because --

Q. (BY MS. KUCERA) -- you not to.

MR. RUIZ: -- because it calls for a legal conclusion, and I'll instruct my client not to answer.

MS. KUCERA: Now don't answer.

Q. (BY MS. KUCERA) Number six on this document marked as Deposition Exhibit 1, it says you are to maintain professional contacts with state, national and local groundwater agencies, attorneys, consultants, legislators and the media. What do you think the term "professional contacts" means?

A. Professional contacts means that I develop intergovernmental relations or intergovernmental



community relations with different organizations so that I can promote the District and we could look to collaborate and cooperate on different programs that can help manage the basin, manage the Aquifer, or even possibly have educational purposes to the public and other things.

Q. What does it mean to you to have professional contacts with the media?

A. Professional contacts with the media, part of my job -- job duties is, I am basically the voice of the District. I am the only employee allowed to talk to the media and to have professional, I guess -- what are we looking -- contacts with the media would mean that if the media has a question about District policies, District meetings, they have budgetary questions, they have tax rate questions, the media comes to all of our meetings. Every once in a while, they'll miss one. So my responsibility is, when something has to be conveyed from the Board to the media, it's my responsibility to do that.

Q. Do you think that the term "professional contacts" encompasses all communication?

A. All communication that I have with the media would be in my capacity as the general manager.

Q. That's not my question.

A. And that would be a professional contact, yes.

Q. So you believe all communication falls under that professional contacts?

A. Yes, because I am working for the District when I talk to the media.

Q. Do you believe slander falls under professional contacts?

MR. RUIZ: Objection, form of question. Calls for a legal conclusion.

A. I would --

MS. KUCERA: That calls for a fact issue.

A. I would have to talk to what slander is with the District's attorney, and that's something I would speak with him about. Any time I talk with the media and we give quotes, it's in writing, and the majority of the time it's cleared by my attorney.

Q. (BY MS. KUCERA) Every time you give quotes to the media it's in writing?

A. Nearly every time we give quotes to the media it's in writing.

Q. Nearly every time?

A. When it's something to be quoted in the paper, yes.

Q. So the quotes before us in this lawsuit, are those in writing?

A. What quotes are we specifically talking about?

Q. We'll come back to that in a few minutes. We'll go through each newspaper article.

My question is, do you believe there's some limit to the term "professional contacts"?

A. There's always a limit to anything.

Q. And how would you define that limit?

A. Professional contact? I would say professional contact would be anything that is outside of your duties.

Q. You believe professional contacts are outside your duties?

MR. RUIZ: Object to the form.

A. I believe that professional contacts -- let me rephrase that, because I'm not quite -- I'm not quite sure what you're asking me.

MR. RUIZ: Can you rephrase the question, please?

Q. (BY MS. KUCERA) I'm asking you to define the scope of the term "professional contact."

A. Professional would be, by definition, somebody that's paid to work. You're a professional. A contact would be somebody that you have a relationship with. So that's how I look at it.

Q. And do you believe the term "professional

contact" is limitless if you're a professional and you're paid to do the work, and they're a contact?

A. I would think the professional contact would be any dealings that you have while you're working. And when I say working, you work for your employment with other agencies, other people, other entities.

Q. So you believe that's limitless?

A. Ma'am, I didn't say it was limitless.

Q. You said any contact.

A. I would say any contact, yes.

Q. So you believe that any contact you have with the media whatsoever falls under professional contacts?

A. I would have to see -- I think something like that would have to be answered on a case-by-case basis. I don't think you can make a broad statement about what's professional and what's not. You'd have to see the context, you'd have to see what the communication was, and you would have to see the reasoning and why it was done. I don't think the broad statements on anything are helpful.

Q. So we can't really define professional contacts?

A. I would say what I've said before. Professional contacts are when you have a professional working contact with an entity, including the media, for your job. Part of my job as the general manager is that I'm

agencies, non-profits and the media.

Q. So you would agree with me that there is some limit to the scope?

A. I did not say there was some limit. I said -- my answer was, my job as the general manager, one of my principal duties is to be the liaison between the District, which includes the Board, other government entities, non-profits, the public and the media.

Q. So you do not agree with me that there's some limit to the scope? It's a "yes" or "no" question, Mr. Mauk.

MR. RUIZ: Objection to the form.

A. There's always a limit to anything.

Q. (BY MS. KUCERA) Do you believe that slander would be outside the scope of your duties?

MR. RUIZ: Objection, form of question. Calls for a legal conclusion.

A. I would have -- I don't know that I've said anything slanderous, ma'am.

Q. (BY MS. KUCERA) My question to you is if you believe that slander is outside the course and scope of your duties?

MR. RUIZ: Objection, form of question. Calls for a legal conclusion.

A. I would believe if anything is considered

there. You can see that it's draft, because it does not have District markings. It's not branded as being from the District. It's not signed. It doesn't have anything attributing itself to the District. It is a draft.

Q. When you wrote the sentence, "The actions of these individuals seem to rise above simple incompetence and likely border on criminal violations," what criminal violations were you referring to?

MR. RUIZ: Are you referring to the conclusion of that report, counsel?

MS. KUCERA: I'm asking what criminal violations he's referring to when he made that statement, when he --

THE WITNESS: I would really --

MS. KUCERA: -- wrote that statement.

THE WITNESS: -- like to talk to Richard before we get into anything that me and him talked about. We are specifically talking about something that my attorney, through the District, and me spoke in. And I really -- being open -- having open enforcement actions and open investigation right now, I really think Richard would tell me that he wants to talk to me.

MR. RUIZ: Can I break for a second?

MS. KUCERA: I'm not asking -- I just want

an understanding for why he believes that there is some basis to call my client incompetent or to insinuate that my client has committed a crime.

MR. RUIZ: And I believe he referred you to the official report and responded to your question regarding the -- the criminal violation. So, I guess, this is going beyond the scope, and he answered your questions. What -- and I think going down this other trail with regard to the pending litigation is exactly what the court --

MS. KUCERA: I'm not asking him about the pending litigation. I'm asking him about the criminal investigation he is alleging to me is ongoing.

THE WITNESS: I never alleged that there's an ongoing criminal investigation.

MR. RUIZ: Let's -- let's ask the question again, please, and see if he can answer it.

Q. (BY MS. KUCERA) Is there an ongoing criminal investigation?

A. There is an ongoing notice -- open notices violation and an investigation.

Q. But it is not criminal in nature?

A. At this time, no.

Q. And when you say "at this time," you're qualifying your statement. What do you mean?

A. I mean that if law enforcement decides to open an investigation in it. All I can say is that right now everything that we're doing is in the civil code. I cannot speak for what's going to happen down the road.

Q. And I'm asking you if you are participating in any sort of criminal --

A. At this --

Q. -- investigation against --

A. -- time --

Q. -- my client?

A. -- no.

Q. Are you planning on doing so in the future?

MR. RUIZ: Objection, form. This is with regard to Mr. Mauk in his individual capacity outside the course and scope of his employment, and with regard to investigations, those are done by the District. So I don't see how that would be a jurisdictional question for the court. Are you saying that him as an individual, private citizen? I think that's probably an appropriate question but --

MS. KUCERA: Well, let's ask it both ways.

MR. RUIZ: I think you can't ask it the other --

Q. (BY MS. KUCERA) As an individual, private citizen, are you intending on pursuing any sort of

A. This "likely border on criminal violations" was in a draft report. It did not go to TDL and R from the Board's actions in, I believe, January.

The statement, "the actions of these individuals seem to rise above simple incompetence," was given to the Board. The Board accepted the recommendations for fines, they voted on the fines, and they voted to send this report to TDL and R, so that is in their findings.

Q. So your testimony would be "the actions of these individuals seem to rise above simple incompetence" is within the Board's findings?

A. It was in the report that they accepted and sent to TDL and R, yes, ma'am.

Q. And "likely border on criminal violations" is not within the Board's findings?

A. That was in a draft report.

Q. Was that within the Board's findings?

A. It was in a draft report, so it would not have been in their findings, because it was not in the draft -- it was not in the final.

Q. So it was not within their findings, correct?

A. It was not in the report that was put up in front of them.

Q. Mr. Mauk, was it in their findings, or was it not

in their findings?

A. In the original case, they did not refer out for criminal violations.

Q. Was it in their findings, or was it not in their findings?

A. That particular statement was not in the report that the Board sent up to TDL and R, so it would not have been in what they sent to TDN -- TDL and R, so it would not be in that stage of their findings.

Q. So it would not be in their findings, correct?

A. Because it was not in a part of what they were looking at in that meeting.

(Exhibit Nos. 8 and 9 were marked.)

Q. (BY MS. KUCERA) I'm going to hand you what's been marked Deposition Exhibit 8 and Deposition Exhibit 9. Do you recognize those documents?

A. Yes, ma'am.

Q. Show me where in Deposition Exhibit 8 or 9 the Board found that my client was incompetent?

A. They did not say that your client was incompetent. It did not use those words. These are specifically dealing with the rules.

Q. Show me where in Exhibit 8 or 9 the Board found that my client's actions rose to the level of criminal violations or bordered on the level of criminal

Deposition Exhibit -- oh, I've given you the copy your attorney gave me.

MR. RUIZ: 7, I believe.

MS. KUCERA: Is it 7?

MR. RUIZ: Uh-huh.

Q. (BY MS. KUCERA) When was that document created?

A. I would have to go back and look, ma'am. It would have been after -- it was created over several months.

Q. Do you believe it was created before or after the open meeting on January 10th?

A. It was created before the open meeting.

Q. Do you believe it was created before or after the notice of violations were issued on October 4th?

A. This particular, the draft?

Q. The draft.

A. The draft was created before.

Q. Was the final report created before or after the meeting on October 4th?

A. I'm not sure if it was created just before or just after. This was the draft that went out about -- it would have went out probably about a week. We continued to work on it, so I don't know the exact time on it.

Q. Is there any way to discern that information?

A. You specifically want to know --

MR. RUIZ: I'm sorry, what was the question, please?

Q. (BY MS. KUCERA) My question is, was the final report drafted before or after the October 4th meeting?

A. Most likely after. The final -- well, I can answer that. The very final report that went to TDL and R where all the attachments and everything were put together, it took several people in the office to do it, so that went out after the meeting.

(Exhibit No. 10 was marked.)

Q. (BY MS. KUCERA) I'm going to hand you what's been marked as Deposition Exhibit 10. Your attorney handed me that document when I got here earlier this morning. It appears to be the open records request from Carolyn Edwards, and it's dated October 4th, correct?

A. Yes.

Q. So at the time she did her open records request, the draft was the only document available?

A. That would be -- indicate that from here. Also a possibility is when she asked for that, that our administrative assistant went back to the folder from the meeting and Xeroxed the one that was in the meeting and handed it to her.

I would guess that the -- I know that the

final report was done well after the meeting, because it did not go up to TDL and R until November. Exactly when the word document part of it was done, I'm not completely sure, but the final document was done probably the end of November.

Q. So these statements contained in the draft report, which was disclosed to Ms. Edwards sometime after October 4th when she made that request, were made prior to the January 10th hearing?

A. Yes. These are October 4th, and that would have been before January.

Q. So those statements were made prior to the open meeting and my client having an opportunity to respond to those allegations?

MR. RUIZ: Objection, form.

MS. KUCERA: What's the objection?

MR. RUIZ: Assuming facts not in evidence. Re-ask the question, please.

Q. (BY MS. KUCERA) The statements contained in the draft report --

A. The only difference between --

Q. Well, hold on. I haven't asked the question. The statements contained in the draft report were made prior to the January 10th meeting, correct?

A. The only difference that I know of between the

January meeting and this report is that one sentence, and that sentence was never uttered. So it was not ever said by me in a meeting. It never was put in a meeting.

MR. RUIZ: Listen to the question. And I think it's just a "yes" or "no" question.

MS. KUCERA: I'm going to object to nonresponsive.

Q. (BY MS. KUCERA) And ask you that the only difference you're aware of is the deletion of the portion about my client being a criminal?

A. That and also that the appendices were not placed in there, the pictures were not placed in there. There's probably some grammar and some other issues. I'd have to get the reports back side-by-side.

Q. So that would indicate that you knew how inflammatory calling him a criminal was?

MR. RUIZ: Objection, form of question.

A. No, ma'am. I did what I was -- after meetings with our attorney, that is how we decided. This was vetted by our attorney, and that's how we decided to go forward with it.

Q. (BY MS. KUCERA) Because there was no basis to make that allegation?

A. I did not say that.

Q. The only addition made to a report months later

was some appendices and deleting the one thing we're fighting about in this lawsuit?

MR. RUIZ: Objection, form of question.

A. Ma'am, I'd have to go back and look at our notes to see exactly when things were changed.

Q. (BY MS. KUCERA) Well, that's what you just testified to.

A. I testified that a majority of what changed in this would have been the exhibits. We can look. If we have time, we can read them side-by-side.

Q. I'm just --

A. We can --

Q. -- asking you --

A. No, I have --

Q. -- if it's your --

A. -- to review.

MR. RUIZ: Hold on.

A. I mean, it might take me a little while. Where is it?

Q. (BY MS. KUCERA) Well, let's finish and then we'll take a break, and you can review those documents, okay.

So back to what we were discussing a few minutes ago. The statements made in that draft report were made prior to my client having the ability to respond to the notice of violation, correct?

A. Correct.

Q. And the statements made in that report were made prior to any official finding or ruling of the District, correct?

A. When you say statements made --

MR. RUIZ: I'm sorry, can you ask the question again? I'm sorry.

Q. (BY MS. KUCERA) The statements made in that draft report were made prior to the Board making any sort of official finding or decision in this case, correct?

A. And when you say statement, you are meaning the written?

Q. Correct.

A. Correct.

Q. Did you ever --

MR. RUIZ: Are you asking the final finding, the violations, or what happened after the January 10th meeting? It's --

MS. KUCERA: I'm asking if the statements contained in that report were made prior to the January 10th meeting, and he answered me that that was correct.

MR. RUIZ: That's correct.

MS. KUCERA: Then I asked him if the statements made in that report were made prior to my client having the ability to address the Board on

January 10th, and he agreed that that was correct as well.

MR. RUIZ: So I didn't understand what your -- you had a question in there.

MS. KUCERA: I feel like he's answered my question.

MR. RUIZ: Okay, all right.

MS. KUCERA: But if you want to keep pounding on it, we can.

MR. RUIZ: No, no. I just wanted to know. I didn't think that was your last question. Go ahead.

Q. (BY MS. KUCERA) Did you ever talk to my client?

A. Yes.

Q. Do you remember when you talked to him?

A. Talked to him several times on the well site and I talked to him at our office.

Q. Do you remember the dates and times you talked to him?

A. No, ma'am.

Q. Do you have some log of the dates and times you talked to him?

A. In the report, there should be some reference to when we spoke with him.

Q. Do you remember the content of your discussions?

A. Especially about the notice of violation. He

A. I would think that making a slanderous statement would be bad.

Q. (BY MS. KUCERA) Do you believe that the Board would condone you making a slanderous statement?

MR. RUIZ: Objection, form of the question. Outside the scope of the deposition with regard to the actions of the Board of Directors and instructing my client not to answer.

MS. KUCERA: I'm just asking his opinion whether he believes that that is something that his supervisors would condone, and that is absolutely within the scope of this deposition.

MR. RUIZ: Ask the question again.

Q. (BY MS. KUCERA) Do you believe the Board would condone you making a slanderous statement?

MR. RUIZ: Objection, form of question. Calls for a legal conclusion. Answer.

A. I don't believe the Board would condone slanderous statements.

Q. (BY MS. KUCERA) So do you believe that making a slanderous statement -- okay, we're assuming it's been made here -- would be in the course and scope of your duties?

MR. RUIZ: Objection, form of question. Calls for a legal conclusion. He asked and answered